# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMES DAVID FISH,<br><br>                                  Plaintiff,<br>v.<br><br>DR. MARY SAUVEY, DR. DILIP TANNAN, CO SCOTT KRISBAHER, and SGT CHRISTOPHER MUSHA,<br><br>                                Defendants. | Case No. 16-CV-176-JPS<br><br>**ORDER** |

## 1.    INTRODUCTION

Plaintiff James David Fish ("Fish"), formerly an inmate incarcerated at Oshkosh Correctional Institution ("OSCI"), brought this action against Dr. Mary Sauvey ("Dr. Sauvey"), Dr. Dilip Tannan ("Dr. Tannan"), Officer Scott Krisbaher ("Krisbaher"), and Sergeant Christopher Musha ("Musha"), alleging that they were deliberately indifferent to his serious medical conditions, in violation of the Eighth Amendment.[1] Specifically, Fish alleges that Musha and Krisbaher ignored his request to be seen immediately by the Health Services Unit ("HSU") on February 7, 2016, when he reported to each of them that he was suffering from back pain. He further alleges that after he was sent to the HSU later that day, Dr. Sauvey refused to send him to the emergency room despite the fact that he was suffering from a medical emergency related to back pain and urinary issues. Finally, he alleges that from February 8, 2016 through his release from OSCI in October 2016, Dr.

---

[1] Fish also brought claims against Security Director Tom Tess and Warden Judy Smith, but he voluntarily dismissed those claims. (Docket #56).

Tannan did not provide him with adequate medical care regarding his back pain and urinary issues.

On March 9, 2017, defendants Dr. Sauvey, Dr. Tannan, Krisbaher, and Musha filed a motion for summary judgment, along with a brief in support, proposed findings of fact, and several declarations. (Motion, Docket #59; Brief in Support, Docket #60; Proposed Findings of Fact, Docket #61; Declarations, Docket #62-68). Fish was required to respond to the defendants' motion on or before March 30, 2017. (Docket #53). As of today's date, the Court has received no response to the motion or other communication from Fish. The motion will be addressed in its unopposed form and, for the reasons explained below, it will be granted.

2. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides the mechanism for seeking summary judgment. Rule 56 states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A "genuine" dispute of material fact is created when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court construes all facts and reasonable inferences in a light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). In assessing the parties' proposed facts, the Court must not weigh the evidence or determine witness credibility; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010).

3.  **RELEVANT FACTS**

Because Fish failed to respond to the defendants' statement of facts, the Court will consider them undisputed. Fed. R. Civ. P. 56(e). The relevant facts are as follows. At all times relevant to this lawsuit, Fish was an inmate at OSCI. *See* (Docket #23). Defendants were employees of the Department of Corrections. *Id.* Drs. Sauvey and Tannan were employed as physicians, Musha was employed as a sergeant, and Krisbaher was employed as a correctional officer. (Docket #61 ¶¶ 2-3, 6-7).

On February 7, 2016, at approximately 1:30 p.m., Fish informed Krisbaher that he was having severe lower back pain. *Id.* ¶ 55. Fish did not tell Krisbaher that he was experiencing urinary issues; Fish only said he had back pain. *Id.* ¶ 60. Based on his observations of Fish, and the information that Fish relayed to him, Krisbaher did not believe Fish's pain required urgent medical care. *Id.* ¶ 62. Krisbaher did not send Fish immediately to the HSU; instead, Krisbaher told Fish to submit a Health Services Request to the HSU nursing staff. *Id.* ¶ 64. At OSCI, general back pain, without evidence of a fall, is not considered an urgent medical issue warranting an immediate referral directly to the HSU. *Id.* ¶¶ 44-49, 81.

Fish then walked away from Krisbaher's desk and went to speak to Musha at the sergeant's station. *Id.* ¶ 65. Fish informed Musha that his back hurt, and he asked Musha to call the HSU. *Id.* Fish did not describe any symptoms, and Musha did not observe any symptoms, indicating that Fish needed immediate medical care. *Id.* ¶¶ 69, 73. Fish did not tell Musha that he was experiencing urinary issues. *Id.* ¶ 71; (Docket #23 at 3). Like Krisbaher, Musha advised Fish to submit a Health Service Request. *Id.* ¶ 74.

Fish returned to his bunk area and waited until second shift started, and then made contact with security staff again. *Id.* ¶¶ 79-82. The second

shift security staff sent Fish to the HSU at 3:15 p.m., and he was seen by registered nurse Corey Schroeder ("Schroeder"). *Id.* ¶¶ 83-84. Fish complained of back pain and difficulty passing urine. *Id.* ¶ 84. Schroeder performed a medical assessment of Fish and then contacted Dr. Sauvey, the on-call physician. *Id.* ¶¶ 85-86. Schroeder relayed Fish's symptoms, and Dr. Sauvey told Schroeder that she believed Fish should be sent to the hospital for the urinary issue. *Id.* ¶ 88. Schroeder told Dr. Sauvey that he believed Fish should be given a muscle relaxer first; he had used this method in the past with success. *Id.* ¶ 89-90.

While it was Dr. Sauvey's preference that Fish be sent to the hospital, she permitted Schroeder to give Fish the muscle relaxer first because it was a reasonable request and Schroeder was familiar with Fish. *Id.* ¶ 91. Dr. Sauvey instructed Schroeder that if Fish was unable to urinate after taking the muscle relaxer, Fish must be sent to the emergency room. *Id.* ¶ 92. Schroeder gave Fish the muscle relaxer, but Fish was still unable to urinate. *Id.* ¶ 96. Fish was transported to the hospital where he was assessed as having back pain and urinary retention, and was prescribed a Foley catheter for one week, a muscle relaxer, and a nonsteroidal anti-inflammatory drug. *Id.* ¶ 98.

Fish was seen the following day by his primary physician, Dr. Tannan. *Id.* ¶ 100. Dr. Tannan determined that Fish's urinary issues were not related to his back pain. *Id.* ¶ 102. Between February 8, 2016 and September 22, 2016, Dr. Tannan had eleven appointments with Fish to treat his chronic back pain and urinary issues. *Id.* ¶¶ 106-134. At each appointment, Dr. Tannan conducted a full assessment of Fish's medical concerns. *Id.* Dr. Tannan prescribed appropriate pain medications and

physical therapy to control Fish's pain, as well as antibiotics to treat his urinary issues. *Id.*

While Fish's back pain waxed and waned, which is common for a patient suffering from chronic back pain, Fish's pain was controlled and diagnostic testing confirmed that his condition was stable and did not require any further medical intervention. *Id.* Fish was released from OSCI in October 2016.

4. **ANALYSIS**

The defendants move for summary judgment on two grounds. First, Drs. Sauvey and Tannan argue that Fish failed to exhaust his administrative remedies as to his claims against them. (Docket #60 at 13). Second, all defendants argue that Fish is not entitled to relief on his Eighth Amendment claims because the defendants were not deliberately indifferent to Fish's medical needs. *Id.* at 20. Finally, the defendants argue they are entitled to qualified immunity as to Fish's Eighth Amendment claims. *Id.* at 32. The Court will address the question of exhaustion first, because "[a] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits[.]" *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). The Court will then turn to the defendants' other arguments.

    4.1    **Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require," and he must do so precisely in accordance with those rules; substantial compliance

does not satisfy the PLRA. *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002); *Smith v. Zachary*, 255 F.3d 446, 452 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by the defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code DOC § 310.04. The process begins with the inmate filing a complaint with the Institution Complaint Examiner ("ICE"). *Id.* at §§ 310.07(1) and 310.09(6). The ICE then investigates the complaint and issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* at §§ 310.07(2) and 310.11. The ICRS defines a "reviewing authority" as "the warden, bureau director, administrator or designee who is authorized to review and decide an inmate complaint." *Id.* at § 310.03(2). The reviewing authority may accept or reject the ICE's recommendation. *Id.* at § 310.07(3). If the ICE recommends dismissal and the reviewing authority accepts it, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE"). *Id.* at §§ 310.07(6) and 310.13. The CCE issues a recommendation to the Secretary of the Department of Corrections who may accept or reject it. *Id.* at §§ 310.07(7), 310.13, and 310.14. Upon receiving the Secretary's decision, or after forty-five days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* at §§ 310.07(7) and 310.14.

Fish failed to follow this process to its completion for his claims against Drs. Sauvey and Tannan. As to Dr. Sauvey, Fish did not file a single inmate complaint alleging that she delayed or denied him medical treatment on February 7, 2016. (Docket #60 at 17). As to Dr. Tannan, Fish

filed three inmate complaints regarding his dissatisfaction with Dr. Tannan's medical care. (Docket #61 ¶ 19.) OSCI's ICE dismissed Fish's first complaint after an investigation, noting that while Fish disagreed with Dr. Tannan's care, the care provided was a matter of professional medical judgment, and the medical records showed that Fish's concerns were being addressed. *Id.* ¶ 23. The ICE rejected the second and third complaints because they alleged the same issues already alleged in the first complaint. *Id.* ¶¶ 20-22; *see also* Wis. Admin. Code § DOC 310.11(5)(g). Fish did not appeal the dismissals to the Corrections Complaint Examiner, as required under the ICRS. (Docket #61 ¶ 24.)

Fish failed to complete each step in the administrative process for his claims against Drs. Sauvey and Tannan. The PLRA requires complete or "proper" exhaustion, *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), and Fish has not done so. His claims against Drs. Sauvey and Tannan must be dismissed.[2]

**4.2    Eighth Amendment**

The Court turns to the merits of Fish's Eighth Amendment deliberate indifference claims. Because Fish's claims against Drs. Sauvey and Tannan will be dismissed for failure to exhaust administrative remedies, the Court will evaluate Fish's Eighth Amendment claims only as alleged against defendants Krisbaher and Musha.

The Eighth Amendment "safeguards prisoners against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Petties v. Carter*, 836 F.3d 722, 727

---

[2]Dismissal of the claims against Drs. Sauvey and Tannan must be without prejudice. *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust under § 1997e(a) is without prejudice).

(7th Cir. 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). To determine whether the Eighth Amendment has been violated in the prison medical context, the Court performs a "two-step analysis, first examining whether a plaintiff suffered from an objectively serious medical condition, and then determining whether the individual defendant was deliberately indifferent to that condition." *Id.* at 728 (citations omitted). The defendants do not contest that Fish's medical condition was serious,[3] but they argue that they were not deliberately indifferent to Fish's medical condition, and thus that their conduct did not violate his Eighth Amendment rights.

The Court looks to the defendants' subjective state of mind to determine whether they acted with deliberate indifference:

> For a prison official's acts or omissions to constitute deliberate indifference, a plaintiff does not need to show that the official intended harm or believed that harm would occur. But showing mere negligence is not enough. Even objective recklessness—failing to act in the face of an unjustifiably high risk that is so obvious that it *should* be known—is insufficient to make out a claim. Instead, the Supreme Court has instructed us that a plaintiff must provide evidence that an official *actually* knew of and disregarded a substantial risk of harm. Officials can avoid liability by proving they were unaware even of an obvious risk to inmate health or safety.

*Id.* (internal citations omitted). The deliberate indifference standard imposes a "high hurdle" for a plaintiff to overcome. *Collins v. Seeman*, 462 F.3d 757, 761-62 (7th Cir. 2006). Fish cannot overcome this hurdle.

---

[3]The defendants state that "[f]or purposes of summary judgment only, Defendants concede that Fish suffered from objectively serious medical conditions on February 7, 2016 when he experienced urinary retention, and subsequently when he suffered chronic back pain, which was pre-existing." (Docket #60 at 20-21).

Fish claims that Krisbaher and Musha were deliberately indifferent to his medical needs because when he informed them of the pain he was experiencing, they directed him to fill out a request to be seen by the HSU the next morning, as opposed to immediately sending him down to the HSU. (Docket #23 at 3).

As to Fish's urinary condition, there is no evidence that Krisbaher or Musha knew that Fish was suffering at the time from urinary issues. Without actual knowledge of Fish's urinary issues, neither can be found to have been deliberately indifferent to this particular medical condition. *Petties*, 836 F.3d at 728.

As to Fish's back pain, the undisputed facts preclude a finding that Krisbaher and Musha "knew of and disregarded a substantial risk of harm." Based on the symptoms that Fish explained to Krisbaher and Musha, and based on Fish's presentation at the time, Krisbaher and Musha determined that Fish was not experiencing urgent pain. (Docket #61 ¶¶ 64, 74). They then followed the prison's policies and procedures by directing Fish to submit a request to the HSU for a non-urgent medical issue. *Id.* ¶¶ 28, 35-42, 44-49, 80. In other words, Krisbaher and Musha subjectively believed that Fish's medical condition *did not* present a substantial risk of harm, thus precluding a finding of deliberate indifference.

Further, only about two hours passed between the time Fish spoke to Krisbaher and Musha and the time Fish was seen in the HSU. *Id.* ¶¶ 55, 83. To show that a delay in providing treatment is actionable under the Eighth Amendment, a plaintiff must also "provide independent evidence that the delay exacerbated the injury or unnecessarily prolonged pain." *Petties*, 836 F.3d at 730–31. Fish has provided no such evidence. While he

was not seen as quickly as he would have liked, Fish was nonetheless seen promptly for his medical issue.

Because no reasonable jury could find that Krisbaher and Musha were deliberately indifferent to Fish's medical condition, Fish's claims against Krisbaher and Musha must be dismissed.[4]

## 5. CONCLUSION

Fish failed to oppose the defendants' motion for summary judgment. For this reason alone, the Court could dismiss Fish's action entirely. *See* Civil L. R. 41(c). On the undisputed facts before the Court, the defendants have proven that Fish did not exhaust his administrative remedies as to Drs. Sauvey and Tannan, and his claims against those defendants will therefore be dismissed without prejudice. Further, no reasonable jury could conclude that Musha and Krisbaher were deliberately indifferent to Fish's medical needs, and therefore Fish's Eighth Amendment claims against those defendants will be dismissed with prejudice.[5]

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #59) be and the same is hereby **GRANTED;**

**IT IS FURTHER ORDERED** that defendants Mary Sauvey and Dilip Tannan be and the same are hereby **DISMISSED without prejudice;**

---

[4] Because the plaintiff's Eighth Amendment claims will be dismissed on their merits, the Court need not address the defendants' argument for qualified immunity.

[5] On May 22, 2017, the defendants filed a motion to stay this action in light of the impending trial date. (Docket #70). Because this action will be dismissed, the motion to stay will be denied as moot.

**IT IS FURTHER ORDERED** that defendants Christopher Musha and Scott Krisbaher be and the same are hereby **DISMISSED with prejudice;**

**IT IS FURTHER ORDERED** that the defendants' motion to stay (Docket #70) be and the same is hereby **DENIED as moot;** and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 24th day of May, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge